499 So.2d 159 (1986)
STATE of Louisiana in the Interest of the Minor, C.V., Plaintiff-Appellee,
v.
The Parents, T.V. and S.V., Defendants-Appellants.
No. 18067-CAJ.
Court of Appeal of Louisiana, Second Circuit.
October 29, 1986.
Writ Denied December 19, 1986.
*160 Northwest Louisiana Legal Services, Inc. by David Rabb, Jr., Shreveport, for defendants-appellants.
Kerwin W. Doyle, Staff Atty. for Dept. of Health and Human Resources, State of La., Shreveport, for plaintiff-appellee.
Before MARVIN, FRED W. JONES, Jr. and LINDSAY, JJ.
FRED W. JONES, Jr., Judge.
The parents of a nine year old girl[*] appealed a judgment terminating their parental rights, asserting that:
(1) The trial court committed error, invalidating the parental termination judgment, when it failed to appoint legal counsel to represent the parents at a hearing to consider removal of custody of the child from the parents.
(2) The trial court erred in finding that the allegations of the petition to terminate parental rights met all the requirements of La.R.S. 13:1601(A)(B)(C)(D)(E) and (F).
(3) The trial court abused its discretion in concluding that the state proved by clear and convincing evidence that the parents of C.V. were mentally retarded and that their condition was so profound that it rendered them incapable of exercising their parental responsibilities without exposing the child to substantial risk of serious harm.
C.V. was born on March 18, 1977. Shortly afterwards the state received referrals from two public health nurses, Careece Perritt and Sue Coile, concerning the mother's inability to adequately care for her newborn infant.
On March 30, 1977, Lois Prothro, a protective service worker, visited the parents' home. She discovered the child was ill, but the parents had not sought medical help. The mother stated the baby had a sore throat and could not swallow because it had sucked too much. The parents indicated a doctor's appointment had been made, but investigation revealed the doctor they allegedly contacted was dead.
C.V. was subsequently hospitalized for dehydration on April 1, 1977. On April 8, 1977, the parents removed the child from the hospital against medical advice. On November 29, 1977, the daughter had convulsions *161 and needed to be hospitalized again. The child had been sick with a high fever for over a week.
Subsequent visits to the home by various social workers revealed that even the basic needs of the child were not being met. The parents were unable to understand the necessity for personal hygiene and the importance of a proper diet. The house was filthy and roach-infested.
C.V. lived with several different family members, but these situations did not work out for one reason or another. Several elderly women in the neighborhood even agreed to help care for the child but the father refused these offers.
On April 27, 1978, the state filed a petition pursuant to La.R.S. 14:403 alleging the child was neglected. An instanter order was signed on the same date granting temporary custody of the child to the state. A hearing was held on June 6, 1978. The parents were not represented by legal counsel. After the hearing, the daughter was declared a ward of the court. The child was placed in foster care and has maintained a good relationship with her foster parents since that time.
C.V. has an I.Q. of 87 and falls within the range of dull normal intelligence. She receives help with her special educational needs from her foster parents and the other children in the household. The parents would not be able to provide this kind of assistance.
On March 4, 1982, the parents were tested by Donald K. Gucher, a clinical psychologist. His findings indicated the mother has a mental age of six years and two months, with an I.Q. estimate of 36 points. This places her in the low end of the moderate mental retardation classification. Dr. Gucher commented in his report:
"I have a very significant concern about her parenting capabilities in terms of intellectual capabilities and based on the interview and psychological testing data I would not recommend returning the child to the care of the mother because I believe that she is not capable of handling the parenting task."
The father had a verbal scale I.Q. score of 67, a performance scale I.Q. score of 68, and a full-scale I.Q. score of 66. This places him in the mild mental retardation classification. Dr. Gucher stated:
"I would have some concerns about his capability to parent in a family where his partner was at an even lower intellectual level."
Periodic staffings have indicated some improvement in the parents' living conditions, but each report recommended the daughter remain in the custody of the state. A custody review hearing was held on February 13, 1984, and an order continuing the child in the custody of the state was rendered on the same date. Other orders continuing custody in the state were rendered on October 22, 1984, December 5, 1984, and June 3, 1985.
It should be noted the parents have received the benefit of a variety of services, such as extensive homemaker services, designed to help them achieve a level of competence to be able to care for their children. These efforts have either been unsuccessful or rejected by the parents.
The parents are not financially able to provide support for the daughter. The mother receives $336 per month in SSI (Supplemental Security Income) and, due to her disability, the father qualifies for AFDC (Aid to Families with Dependent Children). The parents also receive food stamps. The father does "painting work" when it is available.
The parents now live in a sparsely furnished house. There is a living room, kitchen, two bedrooms and a bathroom. Another bedroom would have to be added before the daughter could return to live with the parents. The house has one heater located in the living room. There is only one faucet with a small amount of water pressure. The sewage lines are not even connected. Raw sewage falls under the house and runs into the yard when it rains. A septic tank has been installed, but it does not meet sanitation requirements.
*162 On May 2, 1985 the state filed a petition to terminate parental rights to C.V. on the ground that the parents were unfit to retain parental control because of their mental retardation. The parents were represented by legal counsel at this hearing. Sitting as a juvenile court, the district court rendered a judgment terminating parental rights on October 4, 1985. In oral reasons for judgment, the trial judge stated it was in the best interest of the child to terminate the parental rights of her natural parents. Further, C.V. was at an adoptable age and should not continue in the indefinite status of being in foster care. It was noted that the parents were simply unable to provide for the basic needs of the child because of their own limitations and there was no reasonable expectation they would be able to adequately care for the child in the forseeable future.
Lack of Legal Counsel to Represent Parents at Custody Hearing
The irregular review hearings were conducted without appointing counsel for the parents. The parents argue the trial court erred by not providing them with a court-appointed attorney under Code of Juvenile Procedure Articles 95 and 96, or informing the parents of their right to have an attorney appointed free of charge if they were indigent.
The state contends the parents were not denied due process under the circumstances of this case. It argues the parents made no objection to the child being made a ward of the court and acquiesced in the adjudication for a period of over seven years. After the adjudicatory hearing every reasonable effort and service was made available to the parents with the intent of reuniting the family. In addition, the parents were assigned counsel in the termination proceedings.
The parents primarily rely on the case of In the Interest of Howard, 382 So.2d 194 (La.App.2d Cir.1980). In Howard, the state sought custody of a 14-year-old daughter. The parents advised the trial judge that they were unable to afford an attorney and requested the court to appoint one to represent them. This request was denied.
After a judgment terminating parental rights was rendered, the Northwest Louisiana Legal Assistance Corporation enrolled as counsel for the parents and perfected an appeal in forma pauperis. The issue on appeal was whether the due process clause of the federal or state constitution requires appointment of counsel to represent indigent parents in an abuse or neglect proceeding brought under La.R.S. 14:403.
This court held that in such a proceeding due process requires appointment of counsel for indigent parents threatened with incarceration or when the state seeks removal of the child from the custody of the parents for an indefinite or prolonged period of time.
Howard is distinguishable from the instant case. Here the parents were not threatened with incarceration. The state only sought temporary custody of the child until the parents could be taught parenting skills. Permanent removal was not even considered until extensive efforts to rehabilitate the parents for a period of over seven years proved unsuccessful. In addition, the parents were represented by counsel at the termination of parental rights proceeding.
Since our decision in Howard, the United States Supreme Court decided Lassiter v. Department of Social Services of Durham County, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981).
In Lassiter the court held that the failure to appoint counsel for indigent parents in a proceeding for termination of parental status did not deprive the parents of due process in light of these circumstances: the petition contained no allegations upon which criminal charges could be based, no expert witnesses testified, the case presented no particularly troublesome points of law, and the presence of counsel would not have made a determinative difference for the parents. The court noted that this decision did not imply appointment of counsel is other than enlightened and wise.
*163 Davis v. Page, 714 F.2d 512 (5th Cir. 1983), also lends support to our conclusion.
Howard cited Davis v. Page, 442 F.Supp. 258 (S.D.Fla.1977), in which the court granted summary judgment for a parent seeking a writ of habeas corpus to release her child from the custody of state officials. The Court of Appeals affirmed, but the United States Supreme Court vacated and remanded. On remand, the Court of Appeals held that due process required only a case-by-case determination whether counsel must be appointed for indigent parents in state dependency proceedings.
We conclude that, under the special circumstances of this case, the parents' lack of legal representation at the custody hearing did not invalidate the judgment rendered in the parental termination proceeding, at which they had legal counsel.

Allegations of Petition to Terminate Parental Rights
The parents contend the trial court erred in finding the state proved all the conditions of La.R.S. 13:1601(A-F) in accordance with the burden of proof in La. R.S. 13:1603 [clear and convincing]. They argue that since the legislature did not place an "or" between the last two items in the series, the state must prove all the conditions of La.R.S. 13:1601(A-F).
La.R.S. 13:1601 provides in pertinent part:
The court on its own motion may order that the district attorney petition, or the district attorney in his discretion may petition, for the termination of parental rights of the parent or parents of an abused, neglected, or other child within a juvenile court's jurisdiction, when the grounds set forth in the petition meet all the conditions of Subsections A, B, C, D, E, or F, of this Section.... (emphasis ours)
Although inartfully drafted, it seems clear that the various subsections of the parental termination statute are to be considered disjunctively rather than conjunctively. For a helpful analysis of the act, see Involuntary Termination of Parental Rights in Louisiana: Unravelling the Statute, 58 Tulane Law Review 1045 (1984). The author points out:
"Subsections E and F appear to be residuals enacted to apply to specific situations that could not be resolved under the other subsections.... Subsection F deals with a situation in which the parent has a mental deficiency." p. 1064.
Section F of La.R.S. 13:1601 provides:
(1) The child has been in the custody of the Department of Health and Human Resources for a period of at least one year pursuant to a court order.
(2) The child was removed from the custody of his parent because of the parent's mental illness, mental retardation, or substance abuse; and such condition was so profound that it rendered the parent incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm.
(3) The continued custody of the child was necessitated by the parent's failure or refusal to effect a suitable alternative placement of the child other than foster care.
(4) Every reasonable effort has been made under the circumstances to rehabilitate the parent and such efforts have failed.
(5) There is no reasonable expectation of the parent being rehabilitated.
(6) Expert testimony established that termination of parental rights and adoption are in the child's best interest.
The state alleged and showed by clear and convincing evidence each and every condition listed in La.R.S. 13:1601(F).

Burden of Proof
The parents also claim the trial court abused its discretion in finding the state had proved the parents were mentally retarded and their condition was so profound that it rendered them incapable of exercising parental responsibilities without *164 exposing the child to a substantial risk of serious harm. They argue that not one expert witness testified concerning the parents' mental retardation and the state never sought to have the court order the parents to submit to psychological testing.
The parents' counsel stipulated to the psychological reports by Dr. Gucher being admitted into evidence. Counsel could have objected to the reports and could have had any testing done to the parents that he thought would be beneficial.
The record establishes the parents are incapable of caring for their children due to their limited intelligence.
The parents further contend the trial court abused its discretion in finding the state had proved by clear and convincing evidence that they are "unfit" as defined in La.R.S. 13:1600(6).
La.R.S. 13:1600(6) provides:
"Unfit" refers to a parent who has abused the child by inflicting physical or mental injury which causes severe deterioration to the child, including a child who has been abused sexually, exploited or overworked to such an extent that his health, moral, or emotional well-being is endangered; or refers to a parent who has, although financially able to do so, consistently refused to provide reasonably necessary food, clothing, shelter, or medical service.
While the definition appears to address only intentional actions of a parent, it implies unfitness can result from passive conduct that may result in harm to a child.
The best interest of the child is of paramount importance. It would not be in the best interest of the daughter to return to an environment in which she cannot receive proper care.

Decree
For the reasons cited above, we affirm the judgment of the trial court. To the extent permitted by law, all costs are assessed to the state.
NOTES
[*] The daughter is the oldest of four children. All four of these children are presently in the custody of the state.