568 So.2d 636 (1990)
STATE of Louisiana, in the Interest of TK, ADT and BPT[1].
No. 90-329.
Court of Appeal of Louisiana, Third Circuit.
October 3, 1990.
*637 Wm. J. Bennett, Marksville, for appellant (mother).
George F. McGowin, Alexandria, for appellee (state).
Charles A. Riddle, Marksville, for appellee (children).
GUIDRY, STOKER and LABORDE, JJ.
STOKER, Judge.

ISSUES
In this case a mother appeals from a judgment of the trial court which terminated her parental rights to three of her children, TK, ADT and BPT, who are referred to in this opinion by these initials. The issues are (1) whether the State carried its burden of proof by satisfying the requirements of LSA-R.S. 13:1601(B) and (D) for terminating parental rights, and (2) whether the trial court was legally authorized to award attorney fees to the attorneys appointed by the court to represent the interests of the parent and the children. We affirm the trial court's termination judgment but reverse in part and remand and amend in part as to the award of attorney fees.

FACTS
The record reflects that TK was born to BT on November 15, 1983; ADT was born to BT on June 13, 1987; and BPT was born to BT on April 27, 1986. The record reflects that the identities of the natural fathers of the children are unknown. The intentions or rights of the natural fathers *638 of the children are not at issue in this appeal.
In June 1988 the Office of Community Services conducted an investigation after a family informed the Avoyelles Parish Sheriff's Department that the children had been abandoned to them by BT. The Office discovered that BT left the children with the family, which was known to the Office to be somewhat retarded and living in a filthy, neglectful home. The mother abandoned the children on a Saturday morning, leaving no food, clothing or diaper provisions for the children's use. On the following Monday morning, BT's abandonment was reported to the sheriff's office. The sheriff's office contacted the Office of Community Services to report that the children were abandoned and in need of medical attention, food, clothing and diapers. It was determined that the children were dehydrated, filthy and suffered from multiple insect bites; the baby, ADT, was discovered wearing a shirt for a diaper. On June 14, 1988, an order of instanter removal was issued by the Twelfth Judicial District Court, Parish of Avoyelles, removing the children from the custody of BT based upon allegations of abandonment. The affidavit in support of the instanter order further alleged that BT had been counseled on two separate occasions prior to the June removal regarding the need to have a permanent living situation but she refused to heed the advice of the counselors.
The children were adjudicated children in need of care on August 4, 1988. The children have remained in State custody since June 1988. In June 1988 the State indicated that it would work with BT to attempt reunification with the children. The State recommended that the mother secure a job and a stable home with a goal of reunification with all three children. Further, mental health counseling, visitation privileges and substance abuse counseling were some of the services offered by the State to BT. The case manager testified that prior to the June 1988 removal, the State had validated an allegation by TK that she had been sexually abused by BT's boyfriend's teenage sons. Therefore, the State recommended that BT seek an alternative placement away from her boyfriend, RD, and his children. Nevertheless, BT continues to reside with RD and, as late as the date of trial, testified that she entertains plans to marry RD in the near future.
BT was evaluated by Dr. Daniel J. Lonowski, Ph.D, P.C., a clinical psychologist, on August 1, 1989. She was found to suffer a severe and chronic personality disorder and to harbor a high risk for substance abuse. Dr. Lonowski found BT to be incapable of long-term, consistent and diligent maternal behavior. The doctor found BT to have such a severe personality disorder as to make it inadvisable that the children be returned to her custody. In addition, the doctor opined that BT has so many qualities of dependence that "her dependency needs probably interfere with the sacrifice that apparently is required of her in order to satisfactorily meet the criteria for minimal parental standards." Finally, Dr. Lonowski found that the probability of an enduring change in behavior in BT in the direction of positive parenting is "low."
The State filed a petition for termination of parental rights on October 26, 1989. A termination hearing was held on January 8, 1990, during which BT denied the likelihood that the sexual abuse against TK occurred, announced her intentions to marry RD and stated that she did not take advantage of the counseling services offered by the State because "I feel like I don't need counseling." A judgment terminating BT's parental rights as to the children was signed on January 19, 1990. BT has appealed that judgment. The State through the Department of Social Services answered the appeal asking that the award of attorneys fees to counsel for mother and counsel for children be reversed.

LAW
LSA-R.S. 13:1601 provides several subsections containing requirements for the termination of parental rights. The evidence need only satisfy the requirements set forth under any given subsection. State in the Interest of Townzen, *639 527 So.2d 579 (La.App. 3d Cir.1988), writ denied, 535 So.2d 739 (La.1989).
LSA-R.S. 13:1603 states that the elements of Subsection (B) and Subsection (D) must be proven by clear and convincing evidence. Additionally, it must be proven "that the best interest of the child dictates termination of parental rights." LSA-R.S. 13:1602(D). State in the Interest of a Minor Male Child, 529 So.2d 34 (La.App. 1st Cir.1988).
The State proceeded pursuant to LSA-R.S. 13:1601(B) and (D) which provide as follows:
"§ 1601. Petitioning for the termination of parental rights
"The court on its own motion may order that the district attorney petition, or the district attorney in his discretion may petition, for the termination of parental rights of the parent or parents of an abused, neglected, or other child within a juvenile court's jurisdiction, when the grounds set forth in the petition meet all the conditions of Subsection A, B, C, D, E, or F of this Section. The district attorney may appoint any attorney representing the Department of Social Services as a special assistant district attorney for the purpose of prosecuting any such case, regardless of the domicile of said special assistant."
* * * * * *
"B. (1) One year has passed since the rendition of an abuse or neglect judgment or child in need of care judgment, as defined in R.S. 13:1600(7), pursuant to the Code of Juvenile Procedure, and in the opinion of the court the parent is unfit to rear the child.
"(2) The parent or parents have shown no significant substantial indication of reformation and are unlikely to reform."
* * * * * *
"D. (1) The child has been in the custody of a child welfare department or other person, pursuant to a judicial order, for a period of at least one year.
"(2) The child was removed from the custody of the parents by judicial order due to the parent's abuse or neglect of the child.
"(3) The parent is unfit to retain parental control and there is no reasonable expectation of reformation on the part of the parent or parents.
"(4) The child is an abused or neglected child, the Department of Health and Human Resources has made every reasonable effort under the circumstances to reunite the child with his parents, and the department recommends that it would not be in the best interest of the child to be reunited with his parents."
A review of the elements of LSA-R.S. 13:1601(B) and (D) convinces us that the trial court was correct in finding that the State had met and discharged its burden of proof.

PROCEDURAL REQUIREMENTS

LSA-R.S. 13:1601(B)(1) and 1601(D)(1) and (2).
The record contains the judgments of the trial court rendered August 4, 1988 pursuant to the Code of Juvenile Procedure finding that the children, TK, BPT and ADT were in need of care, abused or neglected; and the children were adjudicated in need of care. Legal custody of the children was assigned to the Department of Health and Human Resources. The petition for termination of parental rights was filed on October 26, 1989. Consequently, one year has passed since the in-need-of-care judgment.

PARENTAL UNFITNESS

LSA-R.S. 13:1601(B)(1).
Under LSA-R.S. 13:1601(B)(1), in order to terminate parenthood, the court must be of the opinion that "the parent is unfit to rear the child." Unfitness is defined in LSA-R.S. 13:1600(6) as follows:
"§ 1600. Definitions
"(6) `Unfit' refers to a parent:
"(a) Who has abused a child by inflicting physical or mental injury which causes severe deterioration to the child, or who has sexually abused, exploited, or overworked a child to such an extent that his *640 or her health, moral, or emotional well-being is endangered; or
"(b) Who has consistently refused to provide reasonably necessary food, clothing, appropriate shelter, or treatment either by medical care or other health services in accordance with the tenets of a well recognized religious method of healing with a reasonable proven record of success. Financial inability alone shall not constitute grounds for termination of parental rights; or
"(c) Whose medical or emotional illness, mental deficiency, behavior or conduct disorder, severe physical disability, or chemical dependency makes the parent unable or unwilling to provide an adequate permanent home for the child at the present time or in the reasonably near future based upon expert opinion or based upon an established pattern of behavior."

LSA-R.S. 13:1600(6)(c).
There is substantial evidence in the record that appellant's emotional illness or mental deficiency, behavior or conduct disorder, severe physical disability, or chemical dependency as described by Dr. Lonowski in his letter of August 2, 1989, and in his testimony of January 8, 1990, made BT unwilling or unable to provide a safe, adequate and permanent home for the children at the present time or in the reasonably near future. Dr. Lonowski, qualified as an expert in the field of clinical psychology, clearly established that in his opinion TK was a sexually abused child, abused by RD's children, that BT was informed of the sexual abuse of TK and planned to marry RD and live with his family anyway. RD testified that in the event the couple married, he could not assure the court that he would find an alternative living situation for his teenage children, because "I just ain't going to put them out." Dr. Lonowski established that BT is not capable, at this time or in the reasonably near future, of protecting TK, or the other children, from continuing abuse by RD's children because of her great dependency needs on RD. Further, Dr. Lonowski opined that BT has a history of substance abuse which cannot reasonably be cured unless BT admits her problem and enters long-term counseling and rehabilitative programs. Yet BT, even at the time of trial, denied her problem and stated she has no plans to seek counseling in the near future. Dr. Lonowski testified that BT's denial prevents her from true, long-term rehabilitation and disallows the establishment of a structural permanent environment for the children. Finally, Dr. Lonowski established that even assuming the alcohol and drug abuse by BT would disappear, BT's basic personality disorder would remain unchanged without long-term psychological counseling.
Dr. Lonowski concluded by establishing that an enduring and lasting change in BT's behavior in the direction of positive parenting is low. Of particular importance to this court are the established facts that appellant does not admit with certainty any sexual abuse against TK and does not admit a problem with substance abuse, much less display any motivation toward true recovery and rehabilitation. In sum, Dr. Lonowski clearly established that appellant suffers from a behavioral conduct disorder or chemical dependency, or both, that render her unable to provide an adequate, permanent home for the children now or in the reasonably near future.

LSA-R.S. 13:1600(6)(a).
Subsection a has been held to include passive conduct that results in harm to the child. State in the Interest of C. V. v. T.V., 499 So.2d 159 (La.App. 2d Cir.), writ denied, 500 So.2d 411 (La.1986). In the instant case, clearly appellant allowed other people to abuse TK. The State validated sexual abuse against TK by the teenage children of RD and the expert testimony supports and agrees with that validation. Nevertheless, because of appellant's behavioral problems, she is unable to protect TK or the other children from further abuse. There is ample evidence in the record to support the trial judge's findings of fact quoted below:
"The decision of the court would, perhaps, be more difficult were it not for the decision of the mother to continue living *641 with [RD]. She is knowingly and understandingly, making that decision to remain with him. Although she denies that she may be facing a choice of her children or [RD], her acts belie what she says. She chooses to stay with him, because she said love is needed. That decision makes the decision of this court much easier. She even admits that [TK] may have been telling the truth about the abuse by the sons of her boyfriend. Yet, she would ask this court to return [TK] to that same situation. The evidence indicates that she intimidated [TK], during visitation, accusing [TK] of causing the problem by accusing [RD's] sons; and yet, she would have this same child return to that same environment. What would happen if that same recurred and [TK] said the same thing again, when the mother intimidated her own daughter for revealing this in the first place? It would be most unwise for the court to look at the possibility of this return."
Thus, it is our holding that the State met its burden of proving that appellant is unfit by her past conduct in allowing sexual abuse of TK to an extent that the children's health, moral and emotional well-being are endangered.

PARENTAL REFORMATION NOT LIKELY

LSA-R.S. 13:1601(B)(2) and (D)(3).
As noted in preceding paragraphs, Dr. Lonowski clearly established that appellant, suffering a severe and chronic personality disorder, did not possess the emotional or behavioral resources to provide a safe, protective and nurturant child-rearing environment for the three children. He further stated that appellant had very poor prospects for improvement. In fact, the doctor specifically stated that appellant could not be trusted to resume care of the children at any point in the future unless she first acknowledged her problems, which she is unable or unwilling to do. Thus, the doctor established that appellant made no significant, substantial indication of reformation and the likelihood of rehabilitation by the appellant is low.
Likewise, Diane Dubroc, the family case manager from 1984 until the time of trial, felt appellant did not improve her situation nor did she stablize herself in anyway. She believed that appellant's situation and behavior had actually regressed, and that she was not likely to change or reform in the future. The record is clear that while appellant may have improved her physical living conditions, which is highly doubtful, her psychological, emotional and mental state has not changed from the time of the original removal in 1988 until the time of trial. Appellant's own testimony illustrates her denial of any sexual abuse against TK and her continued insistence that living with RD and his children could not and would not harm the children in any way. This is a clear indication, according to expert testimony, that appellant has not reformed and indeed is not likely to reform or change in the future.

BEST INTERESTS OF THE CHILDREN DICTATE TERMINATION OF PARENTAL RIGHTS
Ms. Dubroc felt the termination was in the best interests of the children and that it was crucial to the development of the children that they should not be returned to BT's custody. The mother's past performance, the abandonment of the children which culminated in the June 1988 removal of them from BT's custody, the mother's continued denial and poor prognosis for future performance leave no doubt that she cannot properly care for TK, ADT and BPT.

STATUS AS ABUSED OR NEGLECTED CHILDREN
As noted above the trial court found the children to be abused or neglected and in need of care and rendered judgment to that effect over one year prior to the filing of the termination of the parenthood petition. The terms "abused child" and "neglected child" are defined in LSA-R.S. 13:1600(1) and (2):
*642 "§ 1600. Definitions
"(1) `Abused child' is a child against whom has been inflicted physical or mental injury which causes severe deterioration to the child, including a child who has been abused sexually or a child who has been exploited or overworked to such an extent that his health, moral, or emotional well-being is endangered.
"(2) `Neglected child' is a child whose parent or parents, although financially able to do so, have consistently refused to provide reasonably necessary food, clothing, shelter, or medical services. No child who is being provided treatment in accordance with a recognized religious method of healing in lieu of medical treatment shall for that reason alone be considered to be neglected or abused."
Considering the testimony of Dr. Lonowski and the social service worker, it is clear that the children were abused or neglected children as defined above.

EFFORTS TO REUNITE THE CHILDREN WITH THEIR PARENTS
The record is replete with instances demonstrating the efforts of the State to reunite the children with appellant. Diane Dubroc testified that the State continued to attempt to reunite the family until the time of trial, specifically offering to appellant mental health counseling, visitation privileges and substance abuse counseling. Further, the State strongly recommended, on many occasions, that BT move away from RD and his family in order to establish a stable home and nurturing environment for the three children. Still, appellant did not take advantage of the services offered by the State and ignored the State's many efforts to encourage relocation away from RD and his family. As late as the week before trial, BT complained that she had argued with RD in their home and he had pulled a knife on her. Out of the scheduled visits with the children, appellant missed many visits including ADT's and TK's last birthdays and the 1989 Christmas visit with the children. Further, as stated previously, the State did recommend that it would not be in the best interests of the children to be reunited with appellant.
Thus, we hold that the State has proved by clear and convincing evidence that the Department of Health and Human Resources has made every reasonable effort under the circumstances to reunite the children with appellant, BT, and the Department has recommended that it would not be in the best interest of the children to be reunited with their mother, the appellant, BT.

TERMINATION PROPER
The State presented overwhelming evidence to prove each and every element of LSA-R.S. 13:1601(B) or LSA-R.S. 13:1601(D), or both, and the evidence unequivocally established that termination is in the best interests of the children. We have carefully considered the arguments of able counsel for the appellant attempting to explain her conduct or offer reasons for her apparent abuse and neglect and refusal to admit certain abuses. After considering these arguments against the record, we conclude that the trial court was correct in terminating the parental rights of BT with respect to BPT, ADT and TK. The evidence is clear and convincing.

ATTORNEY FEES
The trial court awarded attorney fees to be paid by "the State of Louisiana." The sum of $300 was awarded to the attorney appointed to represent the parent, BT, and $300 was awarded to the attorney appointed to represent the interests of the children. The appointment of these attorneys was made in response to the petition filed by the State through an order attached to the petition. The trial court signed the order on October 26, 1989. The State specifically prayed for the appointment on the ground that the mother was indigent. The parent filed an appeal; the attorney representing the children did not file an appeal. The State of Louisiana "through the Department of Social Services, Office of Community Services," answered the appeal and asked for a reversal of the attorney fee awards against "the Department *643 of Social Services." Although the judgment does not charge the Department of Social Services (DSS) with payment of the attorney fees, the petition for termination of parental rights was accompanied by a "Motion and Order to Appoint Special Assistant District Attorney." The trial court granted the motion and appointed George F. McGowin, attorney for the DSS, as the special district attorney responsible for the prosecution of the instant suit. We conclude that DSS can appear as a party seeking termination of parental rights and that George F. McGowin was and is authorized to represent DSS. State of Louisiana in the Interest of HLD, a Minor v. CDM, 563 So.2d 360 (La.App. 3d Cir.1990).[2]

LIABILITY OF DSS FOR ATTORNEY FEE OF THE ATTORNEY FOR PARENT
Despite the fact that the State provoked the appointment of the attorneys, DSS now contends that the assessment of fees was improper as being in controvention of LSA-C.J.P. art. 95(E)(1). We discussed at length the statutory provision in question in State of Louisiana in the Interest of HLD, a Minor, supra. Under the facts of this case and the tenets of law outlined in HLD, supra, we are required to give full effect to the statute. We reluctantly hold that there is no statutory authority for the trial court's judgment casting the State (or DSS) with the $300 awarded to the attorney appointed to represent BT, the mother of the children. See our comprehensive analysis and discussion of this issue in State of Louisiana in the Interest of HLD, a Minor, supra. Therefore, the trial court's award of an attorney fee to the attorney for BT to be paid by the State or DSS must be reversed. We also remand the case to the trial court with instructions to determine whether there are local funds such as indigent defender board funds to which the court-appointed attorney in this case may be referred. The State of Louisiana in the Interest of Two Minor Children, CAM and AAM, 565 So.2d 523 (La.App. 3d Cir.1990).

LIABILITY OF DSS FOR ATTORNEY FEE OF THE ATTORNEY FOR CHILDREN
An award of attorney fees for an attorney appointed to represent children in proceedings such as these could, and still can, be made under the provisions of Article 95 of the Code of Juvenile Procedure. C.J.P. art. 95(C) and (D); State in Interest of K.V., 524 So.2d 5 (La.App. 1st Cir.1988); State in Interest of Moore, 474 So.2d 478 (La.App. 4th Cir.1985); State in the Interest of a Minor, 446 So.2d 1385 (La.App. 3d Cir.1984) and State of Louisiana in the Interest of HLD, a Minor, supra.
Article 95 of the Code of Juvenile Procedure as amended by Acts 1987, No. 627 provides:
"Art. 95. Right to counsel
"A. A child shall be entitled to counsel in the following proceedings:
(1) A hearing to determine continued custody;
(2) An appearance to answer a petition which requests that the child be adjudicated to be a delinquent;
(3) A transfer hearing pursuant to R.S. 13:1571.1 et seq.;
(4) An adjudication hearing if the petition requests that the child be adjudicated to be a delinquent;
(5) A disposition hearing if the child has been adjudicated to be a delinquent;
(6) A hearing on a motion to modify the judgment of disposition in delinquency proceedings if the motion is filed by the district attorney or probation officer, unless the motion requests that the disposition be less restrictive;
(7) An appeal if the child has been adjudicated to be a delinquent.
B. The child shall be entitled to counsel in any other proceeding.
C. If the parents of the child are financially unable to afford counsel, the *644 court shall appoint counsel in accordance with R.S. 15:141 et seq.
D. If the parents of the child are financially able to afford counsel but fail to employ counsel, the court may appoint counsel to represent the child at the expense of the parents in accordance with R.S. 15:148.
E. (1) If the court appoints an attorney to represent the parents of a child for any stage of child in need of care proceedings, including but not limited to continued custody hearings, adjudicated hearings, dispositional review hearings, and permanency planning hearings, or for any hearing for termination of parental rights, then the fees of the attorney shall not be charged against the Department of Human Resources.
(2) If the parents of the child are determined not to be indigent, they shall be responsible for their own attorney fees as determined by the presiding judge."
LSA-R.S. 15:141, et seq. as they once stood provided for a structure for affording counsel to indigents, including a state indigent board (Section 141) and judicial district indigent defender boards (Section 144). In view of the fact that LSA-R.S. 15:141 through 143 were repealed by Acts 1981, No. 873, Article 95 of the Code of Juvenile Procedure should properly refer in subparagraph C to LSA-R.S. 15:144. In any event, the meaning of the codal article is clear to the effect that a child is entitled to counsel in a proceeding to terminate parental rights and the attorney ad hoc appointed to represent the child shall be compensated through the judicial district indigent defender boards.
We hold that in accordance with the statutorily provided scheme, the trial court must refer the attorney for the children to the appropriate indigent defender board.

CONCLUSION
For the reasons given, the judgment of the trial court terminating the parental rights of BT, mother of the children, is affirmed in all respects except the provisions for attorney fees. As to the assessment of the attorney fee awarded to the attorney appointed to represent the interests of BT, the judgment is reversed and set aside. The case is remanded to the trial court for the purpose of exploring the possibility for payment of the fee consistent with the views expressed above. As to the assessment of the attorney fee awarded to the attorney appointed to represent the interests of the children, the pertinent paragraph of the judgment providing for the attorney fee is amended to read as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Charles Riddle, attorney for the children, be and he is hereby discharged as attorney in this matter, that his fee for services be fixed at $300 and that this proceeding be remanded to the trial court with directions to refer the matter of payment of such fee to the appropriate indigent defender board or to dispose of the matter by other appropriate means.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED; AND AMENDED IN PART.
NOTES
[1] On our own motion we have recaptioned this case and have referred throughout the opinion to various persons by initials in order to effect the confidentiality of the matter.
[2] Although the reasons for judgment fixed the specific agency of the State to be responsible for attorney fees, the formal judgment simply provided the fees to be paid by the State of Louisiana.