609 So.2d 1105 (1992)
STATE of Louisiana in the Interest of V.T., A.T., H.T., and T.T.
No. 24586-JA.
Court of Appeal of Louisiana, Second Circuit.
December 2, 1992.
Rehearing Denied January 14, 1993.
*1106 Susan Skidmore, Monroe, for the State, DOSS.
Nancy Summersgill, Monroe, for the Minor Children.
Kip Gates, Monroe, for the Absentee Putative Fathers.
Indigent Defender Bd. by John W. Focke, Monroe, for Rita Thomas.
Before SEXTON, NORRIS and HIGHTOWER, JJ.
HIGHTOWER, Judge.
This is an appeal by the mother from a judgment terminating parental rights regarding her four children. For the reasons that follow, we affirm.

FACTS
Rita, 26 years old and unwed, voluntarily relinquished care of her four children to relatives in January 1988, after the Louisiana Department of Social Services ("the Department") began investigating allegations of child abuse aimed at the mother's boyfriend. That placement with family members soon proved unsuccessful, and on April 26, 1988, the juvenile court adjudicated all of the youngsters, ranging in age from six weeks to six years, as Children in Need of Care. See former LSA-C.J.P. Art. 85. The judgment also ordered the minors into the foster care system.
Subsequently, the Department prepared a reunification plan that suggested regular visitations by the mother with the children, offered her psychiatric counseling and assistance in obtaining employment, and noted the potential for improved parenting skills through the agency's continuing education programs. Unfortunately, during the next two and one-half years, Rita failed to heed any advice given. On August 31, 1990, a lack of progress led the Department to indicate, in a regular status report to the juvenile court, that the youngsters' best interest would be served only by terminating parental rights. Even so, the agency delayed almost 18 months before petitioning, on February 20, 1992, for severance of such rights as authorized by LSA-Ch.C. Art. 1015(4), (5), and (7).
Following trial on May 29, 1992, the juvenile judge found that the mother clearly could not provide the stability, nurturing and consistency that the children needed. Observing that permanent change in Rita's past behavioral pattern seemed quite unlikely, and that the Department's attempts at avoiding termination had been exemplary, the court concluded the best interest of the youngsters demanded that parental rights be terminated.[1]
This appeal ensued.

DISCUSSION
On appeal, Rita basically maintains that the evidence does not clearly and convincingly support termination of parental rights per LSA-Ch.C. Art. 1015(4), (5), or *1107 (7). She also specifically contends the judge ignored her recent efforts to reform.
LSA-Ch.C. Art. 1015(4), (5), and (7), effective January 1, 1992, set forth substantially similar subsections or paragraphs as embodied in now-repealed LSA-R.S. 13:1601(B), (D), and (F). Inasmuch as the official comments of the recently adopted article disclose no intent to materially revise these particular provisions, we adhere to the jurisprudence interpreting the former legislation. Notably, however, the new codification does not expressly mandate a showing that "the best interest of the child dictates termination of parental rights," as previously enunciated by LSA-R.S. 13:1602(D). Nonetheless, a departure from that factor is not implicated under the various subparts of LSA-Ch.C. Art. 1015, and the primary concern clearly remains the child's welfare and best interest. Of course, the components of any paragraph before us, if proved, invariably will satisfy the "best interest" standard.
Likewise, the burden of persuasion is unchanged. Compare LSA-Ch.C. Art. 1035 and LSA-R.S. 13:1603 (repealed). Thus, proof by clear and convincing evidence is required save when the petition alleges certain criminal or grossly negligent conduct. LSA-Ch.C. Art. 1035. Furthermore, as with the prior statutory provisions, the Department need only fulfill the requirements under one applicable subsection or paragraph. Compare LSA-Ch.C. Art. 1015 and LSA-R.S. 13:1601 (repealed). See also State in Interest of J.H. v. R.F.H., 572 So.2d 629 (La.App. 3d Cir.1990), writ denied, 575 So.2d 374 (La.1991); State in Interest of T.K., 568 So.2d 636 (La.App. 3d Cir.1990); State in Interest of a Minor Male Child, 529 So.2d 34 (La.App. 1st Cir. 1988), all interpreting former LSA-R.S. 13:1601. In addition, as concerns the parameters of appellate review, factual findings are subject to the manifest error-clearly wrong standard. Cf. State in Interest of K.D. and T.F., 586 So.2d 692 (La.App. 2d Cir.1991).
The present record shows that removal of the youngsters from parental care, and the Children in Need of Care adjudication, transpired in early 1988. Inasmuch as neither event occurred due to mental illness, mental retardation, or substance abuse, LSA-Ch.C. Art. 1015(7) does not apply. So too, comparison of the elements of LSA-Ch.C. Art. 1015(4) and (5) shows Paragraph 4 to be directed at situations in which the child has remained in the parental home. Thus, LSA-Ch.C. Art. 1015(5) is the only pertinent provision. (See Appendix.) Under it, in order to terminate parenthood, all of the delineated conditions must be met, as follows:
(5) Prior adjudication as a child in need of care and removal from the parental home
(a) One year has elapsed since a child was removed from the parent's custody pursuant to a court order in a child in need of care proceeding and placed either in the custody of an agency or individual.
(b) The parent is now unfit to retain parental control, and there is no reasonable expectation of his reformation in the foreseeable future.
(c) The department has made every reasonable effort to reunite the child with his parents to no avail but now recommends that reunification would not be in the best interests of the child.
As shown by regular reports sent to the juvenile court, and introduced in evidence, the Department initially favored reunification of the family. Shortly after the minors entered foster care, Rita departed the state for approximately three months without communicating her whereabouts to the agency, yet an August 19, 1988 letter stated that the situation remained conducive for returning the youngsters to their home. Similarly, a February 1989 report alluded to the same goal. However, even by that date, after almost a year, the mother had found neither permanent housing nor employment. Six months later, an update acknowledged a "discouraging" situation reflected in lack of progress by the mother whom Dr. Bobby L. Stephenson, psychologist, diagnosed as suffering from depression. Nonetheless, during that time, Rita continued regular visits with her children.
*1108 By the date of the next report, February 5, 1990, the mother had missed half of all scheduled visitations with the children, failed to attend arranged psychiatric counseling, and refused to cooperate with efforts to assist her in obtaining employment. This document also disclosed possible drug involvement. An August 31, 1990 account set forth a continuing lack of cooperation; Rita declined to take psychotropic medication for depression as prescribed, and also refused drug screening. Psychiatric evaluation revealed mild retardation.
Later reports disclosed further retrogression. As stated on May 15, 1991, the mother had failed to contact the Department for nearly four months, except for one call in April to request emergency medical attention for severe depression. Also, she concealed where, or with whom, she lived. An August 21, 1991 communication to the court indicated Rita had recently served a thirty-day jail sentence. During this time period, she acknowledged her continued unemployment, refused to allow the caseworker inside the residence she shared with a boyfriend, and yet evidenced no thought regarding her children's needs or future. She had, however, managed to attend one scheduled visitation with the youngsters.
Other evidence established that, even during the months following service of the petition to terminate parental rights, Rita failed to appear at certain scheduled visitations, including two during the Thanksgiving and Christmas holidays. Although sporadic psychological counseling occurred between April 1991 and March 1992, the mother tested positive for cocaine usage in February 1992. Later, at trial, she admitted using the substance for a year beginning in 1991, but also insisted she had recently attended drug abuse counseling.
At the hearing, Perry, a man with whom the mother had recently shared a residence, testified concerning their enduring relationship. Other evidence, however, indicated an unstable association and that this individual lacked knowledge of Rita's drug usage. At one time, according to some of the testimony, the mother had provided a consistent and nurturing home environment. Two friends stated that Rita possessed good parenting skills. Yet, on cross examination, they both acknowledged little contact with her after the juvenile judge ordered the youngsters into the foster care system. Moreover, when Dr. Stephenson evaluated the mother in 1989, her child care abilities had clearly deteriorated, and testing suggested that she could not provide the stability needed by the children. In point of fact, Rita's anxiety and depression, at times, would even preclude her providing for her own care.
Considering the totality of the evidence, then, the conclusion that the elements of LSA-Ch.C. Art. 1015(5) have been clearly and convincingly shown is not manifestly erroneous. Not only are the Department's four years of reunification efforts well verified, but also Rita's established behavioral pattern plainly reveals that she is "unfit," as contemplated by LSA-Ch.C. Art. 1003(10).[2] Furthermore, contrary to appellant's argument in brief, the record demonstrates a lack of any reasonable expectation that the mother will reform. Cf. State in Interest of Four Minor Children v. D.W., 585 So.2d 1222 (La.App.2d Cir.1991), requiring a significant and substantial indication of reformation under repealed LSA-R.S. 13:1601(B).

*1109 CONCLUSION
Accordingly, for the reasons stated, the judgment of the trial court is affirmed. Costs are assessed against the mother to the extent financially feasible. See LSA-R.S. 15:148.
AFFIRMED.

APPLICATION FOR REHEARING
Before SEXTON, NORRIS, LINDSAY, HIGHTOWER and VICTORY, JJ.
Rehearing denied.

APPENDIX
LSA-Ch.C. Art. 1015, in pertinent part, states:
Art. 1015. Grounds
The grounds set forth in the petition must meet all of the conditions of any one of the following Paragraphs:....
(4) Prior adjudications as a child in need of care
(a) One year has elapsed since a child in need of care adjudication.
(b) The parent is unfit to retain parental control.
(c) The parent has shown no significant, substantial indication of reformation, and there is no reasonable expectation of his reformation in the foreseeable future.
(5) Prior adjudication as a child in need of care and removal from the parental home
(a) One year has elapsed since a child was removed from the parent's custody pursuant to a court order in a child in need of care proceeding and placed either in the custody of an agency or individual.
(b) The parent is now unfit to retain parental control, and there is no reasonable expectation of his reformation in the foreseeable future.
(c) The department has made every reasonable effort to reunite the child with his parents to no avail but now recommends that reunification would not be in the best interests of the child.
....
(7) Loss of custody due to the parent's condition
(a) One year has elapsed since a court order placing the child in the custody of the department.
(b) The child was removed from the custody of his parents because of the parent's mental illness, mental retardation, or substance abuse.
(c) The parent's condition continues to render the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm.
(d) Despite notice by the department, the parent has refused or failed to provide a plan for the appropriate care of the child other than foster care.
(e) Every reasonable effort has been made under the circumstances to rehabilitate the parent, and such efforts have failed.
(f) There is no reasonable expectation that the parent's condition will change or that he will be rehabilitated in the foreseeable future.
(g) According to expert testimony or proof of an established pattern of behavior, termination of parental rights and adoption are in the child's best interest.
NOTES
[1] None of the four fathers had acknowledged paternity, according to the petition, and even the whereabouts of three were unknown. One subsequently, on May 29, 1992, formally executed an act of surrender. The present judgment, of course, terminated parental rights regarding the others.
[2] LSA-Ch.C. Art. 1003(10) states:

(10) "Unfit" refers to any of the following behaviors or conditions of a parent:
....
(b) Who has consistently refused to provide reasonably necessary food, clothing, appropriate shelter, or treatment either by medical care or other health services in accordance with the tenets of a well-recognized religious method of healing with a reasonable proven record of success. Financial inability alone shall not constitute grounds for termination of parental rights.
(c) Whose medical or emotional illness, mental deficiency, behavior or conduct disorder, severe physical disability, substance abuse, or chemical dependency makes the parent unable or unwilling to provide an adequate permanent home for the child at the present time or in the reasonably near future based upon expert opinion or based upon an established pattern of behavior.