STOKER, Judge.
ISSUES
In this case a mother appeals from a judgment of the trial court which terminated her parental rights to two of her children, CAM and AAM, who are referred to in this opinion by these initials. The issues are whether the State carried its burden of proof by satisfying the requirements of LSA-R.S. 13:1601(B) and (D) for terminating parental rights, and (2) whether the trial court was legally authorized to award attorney’s fees to the attorneys appointed by the court to represent the interests of the parents. We affirm the trial court’s termination judgment but reverse as to the award of attorney’s fees.
FACTS
The record reflects that CAM and AAM, twin girls, were born to DSM on August 9, 1980. The judgment in question also terminated the parental rights of RD, the natural father of the children. However, RD did not file an appeal and thus his parental rights are not at issue here.
In December 1984 the Department of Health and Human Resources[2] conducted an investigation at a Head Start Center attended by CAM and AAM based upon allegations made by the workers at the center that the children had suffered abuse in their home environment. The children advised the workers that they had been sexually abused by their “daddy” in their mother’s bedroom and that their mother was present in the room at various times. On December 14, 1984 an order of instanter removal was issued by the Fifteenth Judicial District Court, Parish of Vermilion, removing the children from the home of DSM and RD based upon allegations of sexual abuse by RD and based upon allegations that DSM witnessed or had knowledge of the sexual abuse, or both, but nevertheless failed to protect the children from further sexual assault. The affidavit in support of the instanter order further alleged that DSM refused to believe the children.
The children were adjudicated children in need of care on January 14, 1986 and a judgment was signed to that effect on April 9, 1987. Following a hearing on January 22, 1985, the trial judge granted custody of the children to the Department for a period of six months. A multitude of hearings to review the custody status of the children have been held, and the children have remained in State custody since December 1984.
In June 1985 the State indicated that it would work with DSM and RD to attempt reunification with the children. The State recommended family team conferences and visitation privileges to reunite the family, together with mental health counseling and treatment programs for the parents. In a report dated January 9, 1986 the social worker supervisor stated that DSM still denied the abuse. DSM continues to deny the abuse until the present date.
In May 1987 the State recommended termination of parental rights, but nevertheless continued to work with DSM. Mental health counseling, visitation privileges, perpetrators’ group for sexual offenders and supervision of the home were some of the services offered by the State to DSM or RD, or both. Further, the record reflects that the State conducted various home studies on the family home until as late as March 1989.
*526 DSM was evaluated by Dr. Al Buxton, Ph.D., a clinical psychologist, in July 1987 and August 1988. She was found to be in the high mild to low borderline range of significantly subaverage intellect. She tried to manipulate and distort the testing. Dr. Buxton found DSM to be very self-centered and self-indulgent, tending to act on impulse and “is probably at times driven by them and overwhelmed by them.” Dr. Buxton found that DSM did not have the emotional and behavioral resources to provide a safe, protective and nurturant environment for the rearing of two female children. In sum, Dr. Buxton recommended that the children not be returned to the family home.
The State filed a petition for termination of parental rights on October 3, 1988 alleging that the mother “was present during much of the ongoing sexual abuse and aware of said abuse but took no steps to protect her children.” A termination hearing was held on July 27, 1989 during which DSM still continued to deny the sexual abuse against the children and refused to believe RD had the intent to sexually abuse the children at anytime. A judgment terminating DSM’s parental rights as to the children was signed on December 11, 1989. DSM has appealed that judgment. The State through the Department of Social Services answered the appeal asking that the award of attorney’s fees to counsel for mother and to counsel for father be reversed.
LAW
LSA-R.S. 13:1601 provides several subsections containing requirements for the termination of parental rights. The evidence need only satisfy the requirements set forth under any given subsection. State in the Interest of Townzen, 527 So.2d 579 (La.App. 3d Cir.1988), writ denied, 535 So.2d 739 (La.1989).
LSA-R.S. 13:1603 states that the elements of Subsection (B) and Subsection (D) must be proven by clear and convincing evidence. Additionally, it must be proven “that the best interest of the child dictates termination of parental rights.” LSA-R.S. 13:1602(D). State in the Interest of a Minor Male Child, 529 So.2d 34 (La.App. 1st Cir.1988).
The State proceeded pursuant to LSA-R.S. 13:1601(B) and (D) which provide as follows:
“§ 1601. Petitioning for the termination of parental rights
“The court on its own motion may order that the district attorney petition, or the district attorney in his discretion may petition, for the termination of parental rights of the parent or parents of an abused, neglected, or other child within a juvenile court’s jurisdiction, when the grounds set forth in the petition meet all the conditions of Subsection A, B, C, D, E, or F of this Section. The district attorney may appoint any attorney representing the Department of Social Services as a special assistant district attorney for the purpose of prosecuting any such case, regardless of the domicile of said special assistant.
* * * * * *
“B. (1) One year has passed since the rendition of an abuse or neglect judgment or child in need of care judgment, as defined in R.S. 13:1600(7), pursuant to the Code of Juvenile Procedure, and in the opinion of the court and the parent is unfit to rear the child.
“(2) The parent or parents have shown no significant substantial indication of reformation and are unlikely to reform.”
* * * * * sfc
“D. (1) The child has been in the custody of a child welfare department or other person, pursuant to a judicial order, for a period of at least one year.
(2) The child was removed from the custody of the parents by judicial order due to the parent’s abuse or neglect of the child.
(3) The parent is unfit to retain parental control and there is no reasonable expectation of reformation on the part of the parent or parents.
(4) The child is an abused or neglected child, the Department of Health and Human Resources has made every reason *527 able effort under the circumstances to reunite the child with his parents, and the department recommends that it would not be in the best interest of the child to be reunited with his parents.”
A review of the elements of LSA-R.S. 13:1601(B) and (D) convinces us that the trial court did not clearly err in finding that the State had met and discharged its burden of proof.
PROCEDURAL REQUIREMENTS
LSA-R.S. 13:1601(B)(1) and 1601(D)(1).
The record contains the judgment of the trial court rendered April 9, 1987 pursuant to the Code of Juvenile Procedure finding that the children, CAM and AAM, were in need of care, abused or neglected; - and the children were adjudicated in need of care. Legal custody of the children was assigned to the Department of Health and Human Resources. The petition for termination of parental rights was filed on October 3, 1988. Consequently, one year has passed since the in-need-of-care judgment.
PARENTAL UNFITNESS
LSA-R.S. 13:1601(B)(1).
Under LSA-R.S. 13:1601(B)(1), in order to terminate parenthood, the court must be of the opinion that “the parent is unfit to rear the child.” Unfitness is defined in LSA-R.S. 13:1600(6) as follows:
“§ 1600. Definitions
(6) ‘Unfit’ refers to a parent:
(a) Who has abused a child by inflicting physical or mental injury which causes severe deterioration to the child, or who has sexually abused, exploited, or overworked a child to such an extent that his or her health, moral, or emotional well-being is endangered; or
(b) Who has consistently refused to provide reasonably necessary food, clothing, appropriate shelter, or treatment either by medical care or other health services in accordance with the tenets of a well recognized religious method of healing with a reasonable proven record of success. Financial inability alone shall not constitute grounds for termination of parental rights; or
(c)Whose medical or emotional illness, mental deficiency, behavior or conduct disorder, severe physical disability, or chemical dependency makes the parent unable or unwilling to provide an adequate permanent home for the child at the present time or in the reasonably near future based upon expert opinion or based upon an established pattern of behavior.”
LSA-R.S. 13:1600(6)(e).
Appellant argues that she is not unfit because she did not perpetrate any abuse upon the children. There is substantial evidence in the record that appellant’s emotional illness or mental deficiency, behavior or conduct disorder, as described by Dr. Buxton in his letters of July 1987 and August 1988 and in his testimony of July 27, 1989, made her unwilling or unable to provide a safe, adequate and permanent home for the children at the present time or in the reasonably near future.
Dr. Buxton, qualified as an expert in the field of psychology, clearly established that in his opinion the children were sexually abused children. Appellant makes a claim that the children later recanted their allegations of sexual abuse. Dr. Buxton succinctly stated, however, that sexually abused children may later recant their story in a confusing and pitiful attempt to seek their parents’ approval. Nevertheless, it is his firm belief that four-year-old children do not have the ability to “make up” allegations of sexual abuse (The girls were four years old when they first divulged that they were being abused sexually.) Dr. Buxton believed the allegations of sexual abuse, graphically related by the girls, did in fact occur, and the social and service workers validated the abuse. The trial judge believed the sexual abuse occurred, and we find no manifest error in this finding which we believe is firmly based on ample evidence provided in the record. Further, Dr. Buxton established that appellant tended to attach herself to neurotic, alcoholic or otherwise deviant males. Once attached, appellant consist *528 ently supports the male, in this case RD, as opposed to the children. Dr. Buxton established that appellant is not capable at this time, or in the reasonably near future, of protecting the children from continuing abuse by RD or any other male for that matter.
Dr. Buxton concluded by establishing that he could not foresee any circumstances under which the children could be returned to the family home in the near future. Of particular importance to this court is the established fact that appellant does not even admit any sexual abuse against the children occurred, much less display any motivation toward true recovery and rehabilitation. Dr. Buxton established that appellant definitely could not resume care of her children at any point in the future unless she first acknowledged a problem existed. In sum, Dr. Buxton clearly establishes that appellant suffers from a behavioral conduct disorder that renders her unable to provide an adequate permanent home for the children now or in the reasonably near future.
LSA-R.S. 13:1600(6)(a).
Subsection (a) has been held to include passive conduct that results in harm to the child. State in the Interest of C. V. v. T.V., 499 So.2d 159 (La.App. 2d Cir.), writ denied 500 So.2d 411 (La.1986). In the instant case, clearly appellant allowed other people to abuse CAM and AAM. The State validated sexual abuse against the children by RD, and the expert testimony supports and agrees with that validation. Nevertheless, because of appellant’s behavioral problems, she is unable to protect the children from further abuse. Thus, it is our holding that the State met its burden of proving that appellant is unfit by her past conduct in allowing sexual abuse of the children to an extent that their health, moral and emotional well-being is endangered.
LSA-R.S. 13:1600(6)(b).
Finally, there is ample evidence in the record to support the trial judge’s findings of fact quoted below:
“Through evidence at continued hearings in this case, including the last one, the Court has been informed that proper physical facilities have never been available to return the girl to the parents. There were many times when the residence serving as a home had no electricity and the water was not connected. There was no gas. The availbility [sic] of funds for support of the children was lacking. ' Sometimes [RD] was living with [DSM], and sometimes he was not. There has been absolutely no stability on the part of the natural parents.”
We believe and hold that appellant did consistently refuse to provide reasonably necessary foods, clothing, appropriate shelter or treatment to the children satisfying the requirements of LSA-R.S. 13:1600(6)(b).
We find that the State has proved by clear and convincing evidence that appellant is unfit within the definition of LSA-R.S. 13:1600(6).
PARENTAL REFORMATION NOT LIKELY
LSA-R.S. 13:1601(B)(2) and D(3).
As noted in preceding paragraphs, Dr. Buxton clearly establishes that appellant, suffering in the high mild to low borderline range of significantly subaver-age intellectual functioning, did not possess the emotional or behavioral resources to provide a safe, protective and nurturant childrearing environment for her two female children. He further stated that appellant had very poor prospects for improvement. Dr. Buxton stated that between his first evaluation of appellant in July 1987 and his evaluation of August 1, 1988, his opinion remained unchanged and it was not in the best interest of the children for appellant to resume care of them. In fact, the doctor specifically stated that appellant could not be trusted to resume care of the children at any point in the future unless she first acknowledged that the sexual abuse occurred, which she is unwilling or unable to do. Thus, the doctor established that the appellant made no significant substantial indication of reforma *529 tion and the likelihood of rehabilitation by the appellant is “dismally poor.”
Likewise, Laura Ortego, the family service worker from December 17, 1984 until August 1988, felt appellant did not improve her situation nor did she stablize herself in anyway. Cathy Tessier, the children’s case manager from August 1988 until the time of trial, believed appellant had not improved her situation and that she was not likely to change or reform in the future. The record is clear that while appellant may have improved her physical living conditions (which is highly doubtful), her psychological, emotional and mental state has not changed from the time of the original removal in 1984 until the time of trial. Appellant’s own testimony illustrates her repeated denial of any sexual abuse against the children and her continued insistence that RD could not and would not have harmed the children in anyway — a clear indication, according to expert testimony, that appellant has not reformed and indeed is not likely to reform or change in the future.
The expert and the social workers, case managers and family service workers all felt that termination was in the best interest of the children and that it was crucial to the development of the children that they should not be returned to appellant’s home. The expert witnesses emphatically stated that if returned to the appellant’s home, the two female children will once again be at severe risk of being the victims of abuse or neglect, or both. The mother’s past performance, continued denial and poor prognosis for future performance leave no doubt that she cannot properly care for the children.
STATUS AS ABUSED OR NEGLECTED CHILDREN
As noted above the trial court found the children to be abused or neglected and in need of care and rendered judgment to that effect over one year prior to the filing of the termination of the parenthood petition. The terms "abused child” and “neglected child” are defined in LSA-R.S. 13:1600(1) and (2):
“§ 1600. Definitions
“(1) ‘Abused child’ is a child against whom has been inflicted physical or mental injury which causes severe deterioration to the child, including a child who has been abused sexually or a child who has been exploited or overworked to such an extent that his health, moral, or emotional well-being is endangered.
“(2) ‘Neglected child’ is a child whose parent or parents, although financially able to do so, have consistently refused to provide reasonably necessary food, clothing, shelter, or medical service. No child who is being provided treatment in accordance with a recognized religious method of healing in lieu of medical treatment shall for that reason alone be considered to be neglected or abused.”
Considering the testimony of Dr. Buxton and the social service workers, it is clear that the children were abused or neglected children as defined above.
EFFORTS TO REUNITE THE CHILDREN WITH THEIR PARENTS
The record is replete with instances demonstrating the efforts of the Department of Health and Human Resources or DSS to reunite the children with appellant. Appellant claims that the Department decided to recommend termination in 1986 and made no effort to reunite after that time. We hold that the record does not support appellant’s assertion. To the contrary, Cathy Tessier, the case manager from August 1988 until the time of trial, testified that the Department continued to attempt to reunite the family until the time of trial, specifically offering to appellant and RD mental health counseling, visitation privileges, the option of attendance at a perpetrators’ group for sexual offenders, supervision of the home and attendance at a rape crisis group. Still, out of twenty scheduled visits since November of 1988, one parent missed seven scheduled visits and the other parent missed eight scheduled visits. Appellant and RD did not take advantage of the services offered by the State and ignored the State’s many efforts *530 to reunite the two female children with them. Further, as stated previously, the Department did recommend that it would not be in the best interest of the children to be reunited with appellant.
Thus, we hold that the State has proved by clear and convincing evidence that the Department of Health and Human Resources has made every reasonable effort under the circumstances to reunite the children with appellant, DSM, and the Department has recommended that it would not be in the best interest of the children to be reunited with their mother, the appellant, DSM.
TERMINATION PROPER
The State presented overwhelming evidence to prove each and every element of LSA-R.S. 18:1601(B) or LSA-R.S. 13:1601(D), or both, and the evidence unequivocally established that termination is in the best interest of the children. We have carefully considered the arguments of able counsel for the appellant attempting to explain her conduct or offer justifiable reasons for her apparent abuse and neglect and refusal to admit certain abuses. After considering these arguments against the record, we conclude that the trial court was correct in terminating the parental rights of DSM with respect to CAM and AAM. The evidence is clear and convincing.
LIABILITY OF DSS FOR ATTORNEY’S FEES
A final issue in this case is whether the State or the Department of Social Services (DSS) may be charged with attorney’s fees awarded to the parents.
The judgment of the trial court awarded attorney’s fees to the two attorneys appointed to represent the mother and natural father of the children which are the subject of this case. The State through the Department of Social Services answered the appeal of the mother and prayed for a reversal of the award of attorney’s fees. The DSS contends that the State, specifically DSS, cannot be assessed with attorney’s fees in termination of parenthood cases because of the prohibition of such assessment in Section E(l) of Article 95 of the Code of Juvenile Procedure. This provision was added to Article 95 by Acts 1987, No. 627 which became effective July 9, 1987.[3]
The trial court appointed separate counsel for the mother and the natural father on petition of the State filed by an assistant district attorney for Vermilion Parish pursuant to LSA-R.S. 13:1600-1605. The State specifically prayed for the appointments on the ground that the parents were indigents. The court-appointed attorneys embarked on their duties and the attorney for the mother has pursued her interests through the appeal on her behalf now before us. Despite the fact that the State provoked the appointment of the attorneys, DSS now contends that the assessment of the fees was improper as being in contravention of LSA-C.J.P. art 95 E(l).
We discussed at length the statutory provision in question in State of Louisiana, In the Interest of HLD, A Minor, 563 So.2d 360 (La.App. 3d Cir.1990), our docket No. 89-1271, rendered on May 23, 1990. Under the facts of this case we are required to give full effect to the statute. The attorney appointed to represent the mother urges that the statutory change should not apply to him because he was first appointed to represent the mother before the enactment of the statutory change. For the reasons that follow, we hold that the statutory change does apply in this case.
On March 2, 1987 the mother, in proper person, filed a motion in this matter alleging her indigency and requesting appointment of counsel in connection with the proceedings by which the State sought to remove the children from her custody. The *531 trial court appointed Dennis Bundick. The motion was accompanied by alternative orders, one ordering that the Department of Health and Human Resources (now DSS) be made responsible for the attorney’s fees and necessary expenses. This order was not signed. Instead, the trial judge signed the alternative order which provided “that DENNIS BUNDICK of the Indigent Board be appointed to represent the mover [the mother] in the proceedings herein.”
On October 8, 1988 the State filed its petition for termination of parental rights in which it prayed for appointment of an attorney to represent the interest of the indigent parents. The State also prayed that an attorney be appointed to represent “the interest of the children pursuant to LSA-R.S. 15:148,” and the court did appoint an attorney and made specific reference to LSA-R.S. 15:148. Although the matter is not at issue here, we interpret the trial court order to mean that the attorney appointed to represent the children was to be compensated by an indigent defender board. Neither the petition nor the order made reference to any authority indicating how the attorneys for the parents were to be paid. Dennis Bundick and Roger Boyn-ton were appointed. In its reasons for judgment the trial court made the following comments regarding his award of attorney’s fees for counsel appointed to represent the indigent parents:
“The Court will award attorney’s fees for the court-appointed attorney for [the mother] and the court-appointed attorney for [the father]. This decision is made in spite of Article 95 of the Juvenile Code. The statutory rule that the fees of any court-appointed attorney shall not be charged against the Department of Health and Human Resources became effective July 9, 1987. These proceedings have been pending since December of 1985 and the necessity for the Court to appoint attorneys for the mother and the father, in the opinion of the Court, predated the amendment mentioned above. Therefore, the Court awards the following fees and expenses, charg[e]able as court costs:
Dennis R. Bundick, court-appointed
attorney for [the mother]
Attorney’s fees .$2,662.50
Expenses.$ 50.75
Total.$2,713.25
Roger E. Boynton, court-appointed attorney for [the father]
Attorney’s fees .$1,552.50
“All costs of these proceedings are assessed against the State of Louisiana, Department of Health and Human Resources or Department of Social Services, whichever agency is applicable.
“An appropriate judgment will be signed upon presentation, consistent with these views.”
Although the reasons for judgment fixed the specific agency of the State to be responsible for the court costs, which included the attorney’s fees, the formal judgment terminating the parental rights simply provided that the fees “be paid by the State of Louisiana.”
As we noted in the HLD case referred to above, DSS (or the Department of Health and Human Resources) was responsible for court-appointed attorney’s fees in termination cases prior to the amendment of LSA-C.J.P. art. 95. It was treated like any other plaintiff required to pay such costs, and the Supreme Court so held. State In Interest of Johnson, 475 So.2d 340 (La.1985).
In the brief submitted to this court of appeal by counsel for the mother, he argues that the trial court was authorized to assess attorney’s fees for his services because the case has been pending since December 1984, he was appointed to represent the mother on March 2, 1987 and the amendment of LSA-C.J.P. art 95 was not effective until July 9, 1987. We are sympathetic to counsel’s plea; however, we regretfully conclude that the effect of the statutory amendment runs against him. Mr. Bundick’s original appointment was not with reference to the termination of parenthood proceedings but was made in reference to other proceedings which occurred before the filing of the termination proceedings. When the appointment of Mr. Bundick and Mr. Boynton was made on *532 October 30, 1988, the prohibition against charging DSS had been in effect for over a year. The original appointment of Mr. Bundick indicated that he should be paid under an indigent defender board scheme. The order presented to the trial court with termination petition carefully avoided mention of any authority under which the attorney’s fees for the indigent parents could be paid.
We reluctantly conclude that the trial court’s award of attorney’s fees to be paid by the State or DSS must be reversed. If we had concluded otherwise, it would have been appropriate to recast the judgment in conformity with the reasons for judgment and to have provided that the attorney’s fees be paid by the State of Louisiana, through the Department of Social Services, rather than merely against the State of Louisiana. As the trial court’s judgment reads, it purports to levy a general obligation against the State which would be of questionable validity. In the HLD case cited above we discussed the anomaly of termination proceedings brought by district attorneys in conformity with statutory authority where the true litigant is DSS. In HLD we found that DSS had agreed to pay the fees of an attorney appointed by a court to represent an indigent parent and upheld the award on that basis.
Mr. Bundick filed an excellent brief in this court in support of the mother of the children, and we have no reason not to believe that his services, or those of the other attorney, were worth the amount fixed by the trial court. We emphasize that our ruling has nothing to do with the awards or the amounts awarded. Our ruling is confined to holding that these costs cannot be assessed to DSS or the State in general.
In his brief Mr. Bundick raises the specter of violation of constitutional requirements of due process. Paradoxically, this does not apply to Mr. Bundick because, as the mother’s court-appointed attorney, he has represented her well and she has not been deprived of due process. The real danger, as we noted in HLD, is the effect which may be wrought on all future proceedings under LSA-R.S. 13:1601 if no means is provided for payment of court-appointed attorneys. In this connection, while we reverse as to the assessment of the fees to DSS or the State, we will remand the case to the trial court with instructions to determine whether there are local funds such as indigent defender board funds to which the court-appointed attorneys in this case may be referred.
CONCLUSION
For the reasons given, the judgment of the trial court terminating the parental rights of DSM and RD, the mother and natural father of the children, is affirmed in all respects except the provisions assessing attorney’s fees awarded to the attorneys appointed to represent the interests of DSM and RD to the State of Louisiana. As to such assessment of attorney’s fees, the judgment is reversed and set aside. The case is remanded to the trial court for the purpose of exploring the possibility for payment of the fees consistent with the views expressed above.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

. The Department of Health and Human Resources of the State of Louisiana is now the Department of Social Services, sometimes referred to herein as DSS.

. LSA-C.J.P. art. 95E(1) provides:
E. (1) If the court appoints an attorney to represent the parents of a child for any stage of child in need of care proceedings, including but not limited to continued custody hearings, adjudication hearings, dispositional review hearings, and permanency planning hearings, or for any hearing for termination of parental rights, then the fees of the attorney shall not be charged against the Department of Health and Human Resources.