572 So.2d 629 (1990)
STATE of Louisiana, In the Interest of JH and SEH, Plaintiff-Appellee,
v.
RFH and TH, Defendants-Appellants.
No. 90-323.
Court of Appeal of Louisiana, Third Circuit.
December 12, 1990.
Writ Denied February 8, 1991.
*630 William J. Cutrera, Lake Charles, for appellant Mother.
Woodley, Williams, Fenet, Palmer & Norman, Donald C. Brown, Lake Charles, for appellant Tommy Howard.
Ronald Rossitto, Lake Charles, for appellee Dist. Atty.'s Office.
Raggio, Cappel, Chozen & Berniard, Stephen A. Berniard, Lake Charles, for appellee-State.
Before STOKER, LABORDE and YELVERTON, JJ.
STOKER, Judge.
In this case a mother and father appeal from a judgment of the trial court which terminated their parental rights to two of their children, JH and SEH, who are referred to in this opinion by these initials. In this proceeding we find that the State carried its burden of proof by satisfying at the least the requirements of LSA-R.S. 13:1601(B) and (D) for terminating parental rights. For the reasons discussed below, we affirm the trial court's termination judgment.

FACTS
The record reflects that JH was born to RFH on September 11, 1979; and SEH was born to RFH on January 29, 1982. TH, the natural father of the children, is not named on either child's birth certificate. Nevertheless, TH acknowledges the children as his own natural children and challenges the termination judgment of the trial court.
On May 24, 1985, the Office of Human Development, Parish of Calcasieu, received a report of alleged sexual abuse concerning the four children of TH and RFH. Two of the children allegedly injured were JH and SEH. The office conducted an investigation and concluded that TH had sexually abused an older female child on several occasions. Further, the investigation noted that the Child Protection Agency had received approximately nineteen complaints of abusive conduct and neglectful care by RFH and TH with respect to their children since 1978. A number of the complaints noted TH's abusiveness to the children and to RFH. The allegations of neglect involved no utilities, no food in the home, no treatment for medical problems, lice infestation, excessive absenteeism from school, inadequate housing and evictions. The investigation discovered widespread complaints from neighbors and family members of the children begging, borrowing and stealing food and of TH and RFH having been observed in a drunken and unintelligible state on numerous occasions.
On May 28, 1985, an order of instanter removal was issued by the Fourteenth Judicial District Court, Parish of Calcasieu, removing the children from the custody of RFH and TH. The affidavit in support of the instanter order alleged that RFH and TH were referred to and encouraged to attend the John Briscoe Substance Center for evaluation and treatment for their alcoholism. Nevertheless, TH and RFH continually failed to appear for their appointments at the center. Further, the couple were referred for parenting classes and they also failed to follow through with these. Finally, the affidavit noted that the couple consistently denied that the children were being abused and neglected and refused to cooperate with school personnel in order to help resolve the children's problems.
*631 The children were adjudicated children in need of care, having been found to be abused and neglected on September 5, 1986. TH was convicted of aggravated rape as a result of the sexual abuse of the older female sibling of the two children at issue. He was sentenced to life imprisonment, plus fifteen years, without benefit of parole. He currently resides in Angola State Penitentiary.
The State indicated it would work with RFH to attempt reunification with the children. The State recommended that the mother seek inpatient treatment for her alcoholism at the Briscoe Center. It was decided that upon completion of inpatient treatment RFH would engage in parenting classes, obtain individual counseling and engage in some sort of training which would enable her to find employment to support the children when they were returned to her.
After spending less than forty-eight hours at the Briscoe Center, RFH left, stating she could not stand the confinement. She made no further attempts to obtain treatment for her alcoholism until the week before the trial on the termination proceeding.
The State filed a petition for termination of parental rights on September 13, 1989. A termination hearing was held on December 8, 1989. At the time of the termination hearing, RFH was residing in Gatesville, Texas, having decided after an overnight visit to establish a marriage with BB who agreed to adopt all of RFH's children.
A judgment terminating RFH and TH's parental rights as to the children was signed on January 30, 1990. RFH and TH have appealed that judgment.

LAW
The petition for termination filed by the State requested termination under LSA-R.S. 13:1601(A), (B), (C), (D) and (E). The trial judge found the evidence supported proof of subsections A, B, C, D and E. From our review of the record, we conclude that the State has established grounds for termination under subsections B and D. For that reason we find it unnecessary to consider the other subsections.
LSA-R.S. 13:1601 provides several subsections containing requirements for the termination of parental rights. The evidence need only satisfy the requirements set forth under any given subsection. State in the Interest of Townzen, 527 So.2d 579 (La.App. 3d Cir.1988), writ denied, 535 So.2d 739 (La.1989).
LSA-R.S. 13:1603 provides that the elements of subsection (B) and subsection (D) must be proven by clear and convincing evidence. Additionally, it must be proven "that the best interest of the child dictates termination of parental rights." LSA-R.S. 13:1602(D). State in the Interest of a Minor Male Child, 529 So.2d 34 (La.App. 1st Cir.1988).
LSA-R.S. 13:1601(B) and (D) provide as follows:
"§ 1601. Petitioning for the termination of parental rights
"The court on its own motion may order that the district attorney petition, or the district attorney in his discretion may petition, for the termination of parental rights of the parent or parents of an abused, neglected, or other child within a juvenile court's jurisdiction, when the grounds set forth in the petition meet all the conditions of Subsection A, B, C, D, E, or F of this Section. The district attorney may appoint any attorney representing the Department of Social Services as a special assistant district attorney for the purpose of prosecuting any such case, regardless of the domicile of said special assistant."
* * * * * *
"B. (1) One year has passed since the rendition of an abuse or neglect judgment or child in need of care judgment, as defined in R.S. 13:1600(7), pursuant to the Code of Juvenile Procedure, and in the opinion of the court the parent is unfit to rear the child.
"(2) The parent or parents have shown no significant substantial indication of reformation and are unlikely to reform."
* * * * * *

*632 "D. (1) The child has been in the custody of a child welfare department or other person, pursuant to a judicial order, for a period of at least one year.
"(2) The child was removed from the custody of the parents by judicial order due to the parent's abuse or neglect of the child.
"(3) The parent is unfit to retain parental control and there is no reasonable expectation of reformation on the part of the parent or parents.
"(4) The child is an abused or neglected child, the Department of Health and Human Resources has made every reasonable effort under the circumstances to reunite the child with his parents, and the department recommends that it would not be in the best interest of the child to be reunited with his parents."
A review of the evidence and the elements of LSA-R.S. 13:1601(B) and (D) convinces us that the trial court was correct in finding that the State carried its burden of proof by the standard of clear and convincing evidence.

PROCEDURAL REQUIREMENTS

LSA-R.S. 13:1601(B)(1) and 1601(D)(1) and (2).
The record contains the judgment of the trial court rendered September 5, 1986 pursuant to the Code of Juvenile Procedure finding that the children, JH and SEH were in need of care, abused or neglected; and the children were adjudicated in need of care. Legal custody of the children was assigned to the Department of Health and Human Resources. The petition for termination of parental rights was filed on September 13, 1989. Consequently, one year has passed since the in-need-of-care judgment.

PARENTAL UNFITNESS
LSA-R.S. 13:1601(B)(1) and 13:1601(D)(3).
Under LSA-R.S. 13:1601(B)(1) and 13:1601(D)(3), in order to terminate parenthood, the court must be of the opinion that "the parent is unfit to rear the child." Unfitness is defined in LSA-R.S. 13:1600(6) as follows:
"§ 1600. Definitions
"(6) "Unfit' refers to a parent:
"(a) Who has abused a child by inflicting physical or mental injury which causes severe deterioration to the child, or who has sexually abused, exploited, or overworked a child to such an extent that his or her health, moral, or emotional well-being is endangered; or
"(b) Who has consistently refused to provide reasonably necessary food, clothing, appropriate shelter, or treatment either by medical care or other health services in accordance with the tenets of a well recognized religious method of healing with a reasonable proven record of success. Financial inability alone shall not constitute grounds for termination of parental rights; or
"(c) Whose medical or emotional illness, mental deficiency, behavior or conduct disorder, severe physical disability, or chemical dependency makes the parent unable or unwilling to provide an adequate permanent home for the child at the present time or in the reasonably near future based upon expert opinion or based upon an established pattern of behavior."
LSA-R.S. 13:1600(6)(b) and 13:1600(6)(c).
There is substantial evidence in the record that appellants' emotional illness or mental deficiency, behavior or conduct disorder, severe physical disability, or chemical dependency made RFH and TH unwilling or unable to provide a safe, adequate and permanent home for the children at the present time or in the reasonably near future.
Further, there is substantial evidence in the record that RFH and TH consistently refused to provide reasonably necessary food, clothing and shelter to the children. The evidence reflects that the parents are unable to provide appropriate parenting for these two young children. The father is serving a life sentence in prison without benefit of parole. The testimony of the case workers confirms the fact that the *633 mother abuses alcohol. They testified that the mother attended many of the scheduled visits with the children smelling of alcohol. Further, the mother admitted that because of her abuse of alcohol on at least one occasion she simply could not remember her older daughter's disclosure of the exceptional fact that her father, TH, had raped and sexually abused her. All testimony and reports indicate the parents are unfit to adequately parent their children.
Counsel for RFH argues that the chemical dependency of RFH must be established by expert testimony and none of the witnesses were experts. Counsel refers to LSA-R.S. 13:1600(6)(c). This provision requires that the proof be "based upon expert testimony or based upon an established pattern of behavior." Whether or not the witnesses were experts, their testimony is clear and convincing that RFH had an established pattern of chemical dependency.
Appellants argue that financial inability alone should not constitute grounds for termination of parental rights. We agree. We believe the record is clear that the parents' gross inability to provide nurturant care of any kind for the children, their passive conduct causing harm to the children and their severe neglect of the children's most basic needs support the court's opinion that the parents are legally unfit. Our opinion is not based on the parents' financial stress.

PARENTAL REFORMATION NOT LIKELY

LSA-R.S. 13:1601(B)(2) and (D)(3).
As noted in preceding paragraphs, the parents do not possess the emotional or behavioral resources to provide a safe, protective and nurturant child-rearing environment for the two children. It is our view that appellants have very poor prospects for improvement. The father has no real opportunity for rehabilitation or reformation during the life sentence he is condemned to serve. That life sentence clearly and convincingly establishes that there exists no reasonable expectation of reformation and that the father is unlikely to reform, warranting the termination of his parental rights.
The evidence establishes that the mother checked herself out of a substance abuse clinic after only two days. She had a relationship with a series of men, showed no steady employment habits and did not accept individual counseling or parenting classes offered by the State. The caseworkers felt the mother did not improve her situation nor did she stabilize herself in anyway. The record is clear and convincing that the mother's emotional and mental state has not changed from the original removal until the time of trial.

BEST INTERESTS OF THE CHILDREN DICTATE TERMINATION OF PARENTAL RIGHTS
The caseworkers felt the termination was in the best interest of the children, and that it was crucial to the development of the children that they should not be returned to RFH and TH's custody. The mother's past performance, the father's life sentence in Angola, the mother's continued inability to take advantage of the services offered by the State and her poor prognosis for future performance leave no doubt that RFH and TH cannot properly care for JH and SEH.

STATUS AS ABUSED OR NEGLECTED CHILDREN
As noted above the trial court found the children to be abused or neglected and in need of care and rendered judgment to that effect over one year prior to the filing of the termination of the parenthood petition. The terms "abused child" and "neglected child" are defined in LSA-R.S. 13:1600(1) and (2):
"§ 1600. Definitions
"(1) `Abused child' is a child against whom has been inflicted physical or mental injury which causes severe deterioration to the child, including a child who has been abused sexually or a child who has been exploited or overworked to such an extent that his health, moral, or emotional well-being is endangered.

*634 "(2) `Neglected child' is a child whose parent or parents, although financially able to do so, have consistently refused to provide reasonably necessary food, clothing, shelter, or medical services. No child who is being provided treatment in accordance with a recognized religious method of healing in lieu of medical treatment shall for that reason alone be considered to be neglected or abused."
Considering the testimony of the social service workers, it is clear that the children were abused or neglected children as defined above.

EFFORTS TO REUNITE THE CHILDREN WITH THEIR PARENTS
The record is replete with instances demonstrating the efforts of the State to reunite the children with appellants. The case workers testified that the State continued to attempt to reunite the family until the time of trial, specifically offering to the appellants mental health counseling, visitation privileges and alcohol abuse counseling. Further, the State strongly recommended, on many occasions, that RFH and TH attempt to establish a stable home and nurturing environment for the two children. They encouraged the mother to find a stable income from an occupation. Still, appellants did not take advantage of the services offered by the State. Out of the scheduled visits with the children, the appellant-mother missed many visits. Further, as stated previously, the State did recommend that it would not be in the best interests of the children to be reunited with appellants.
Thus, we hold that the State has proved by clear and convincing evidence that the Department of Health and Human Resources made every reasonable effort under the circumstances to reunite the children with appellants. The Department has recommended that it would not be in the best interest of the children to be reunited with their parents, the appellants, TH and RFH.

CONCLUSION
The State presented overwhelming evidence to prove each and every element of LSA-R.S. 13:1601(B) and LSA-R.S. 13:1601(D), and the evidence unequivocally established that termination is in the best interest of the children. We have carefully considered the arguments of able counsel for the appellants. Specifically, we have considered the appellant-mother's argument that her pending marriage to BB changes the situation as to her apparent fitness to mother the two children. Contrarily, we believe her impulsive decision to relocate to Texas with BB supports the conclusion of the trial court that it would not be in the best interest of the children to be reunited with her.
Further, we have carefully considered the constitutional issues raised by RFH and TH and find no merit in any of their contentions. The record is clear that both parents were properly served with notice of the termination proceeding, were present at the proceeding and testified at the proceeding with the advice of court-appointed counsel. After considering all arguments against the record, we conclude that the trial court was correct in terminating the parental rights of RFH and TH with respect to JH and SEH. The evidence is clear and convincing.
AFFIRMED.