639 So.2d 426 (1994)
STATE of Louisiana in the Interest of S.C., L.C., J.C. and B.N., Plaintiff-Appellee,
v.
D.N.C., Defendant-Appellant.
No. 26104-JA.
Court of Appeal of Louisiana, Second Circuit.
June 22, 1994.
*427 James E. Calhoun, Natchitoches, for appellant.
George McGowin, Alexandria, for appellee.
James Womack, Winnfield, for minor children.
Before MARVIN, LINDSAY and BROWN, JJ.
BROWN, Judge.
A mother of four appeals the termination of her parental rights as to her two youngest children. The two oldest children had been placed with their legal father. For the reasons expressed below, we affirm and remand.

FACTS
The journey ending with the June 1993 judgment granting the request of the State of Louisiana to terminate the mother's parental rights began on December 9, 1989. On that date the mother brought her two-month-old infant (BN, d.o.b. 10-10-89) to the Jackson Parish Hospital because of an abnormally low weight. At that time the mother was hallucinating and obviously unable to care for the infant. The infant responded to nourishment and treatment, indicating that her condition was caused by neglect.
On the following day, December 10, 1989, the mother left the hospital without the infant and returned to Winnfield. She returned to the hospital later that day and appeared to be intoxicated and/or under the influence of drugs. Hospital personnel insisted that she leave or submit to a blood screen. The blood screen revealed the presence of Xanax and ethyl alcohol.
On December 13, 1989, the State of Louisiana, Department of Health and Human Resources, filed an affidavit of abuse/neglect and obtained an instanter order placing the infant, BN, and her siblings, SC (d.o.b. 05-05-78), LC (d.o.b. 06-14-80) and JC (d.o.b. 04-15-86), in the custody of the state. After a hearing on December 15, 1989, the trial court found the children in need of care and ordered that they remain in the state's custody.
The three older children were placed with their legal father. The infant was placed in foster care. Because of the father's inability *428 to care for JC, age three, he too was placed in a foster home.
The state filed a petition seeking to have the four children adjudicated in need of care. An adjudication hearing was held on May 7, 1990, and on May 30, 1990, the trial court found the children to be in need of care and that their continued custody with the state was necessary.
On April 22, 1991, the infant's natural father executed a voluntary act of surrender to the state. On October 11, 1991, after unsuccessful efforts to rehabilitate and reunite mother and children, the Department of Social Services[1] filed a petition to terminate the parental rights of the mother regarding the two youngest children, BN and JC. As to JC, an affidavit alleging that he had been abandoned by his legal father was also filed.
Hearings were held on March 2, 1992, and May 7, 1992. On June 30, 1993, judgment was rendered. JC was declared to be an abandoned child with regard to his father, whose parental rights and obligations were terminated. The parental rights and obligations of the mother with regard to both JC and BN were terminated and the children were declared available for adoption.
The mother has appealed.

DISCUSSION

Termination of Parental Rights
The trial court found two grounds supporting the termination of the mother's parental rights under LSA-R.S. 13:1601(B) and (D), which were in effect at the time the Department of Social Services filed its petition. By the date of the hearing, however, this law had been repealed and replaced by the Louisiana Children's Code. LSA-Ch.C. Art. 1015(4) and (5) are consistent with and do not substantially change the former provisions. State in the Interest of V.T., 609 So.2d 1105 (La.App. 2d Cir.1992), writ denied, 614 So.2d 1269 (La.1993).
The finding of one of the grounds set forth in the code is sufficient to justify the termination of parental rights. State in the Interest of A.M.M., 622 So.2d 1217 (La.App. 2d Cir.1993). Because LSA-Ch.C. Art. 1015(4) is directed at situations in which the children have remained in the parental home, State in the Interest of V.T., supra, LSA-Ch.C. Art. 1015(5) is the applicable provision.
LSA-Ch.C. Art. 1015 provides, in part:
The grounds set forth in the petition must meet all of the conditions of any one of the following paragraphs: ...
(5) Prior adjudication as a child in need of care and removal from the parental home
(a) One year has elapsed since a child was removed from the parent's custody pursuant to a court order in a child in need of care proceeding and placed either in the custody of an agency or individual.
(b) The parent is now unfit to retain parental control, and there is no reasonable expectation of his reformation in the foreseeable future.
(c) The department has made every reasonable effort to reunite the child with his parents to no avail but now recommends that reunification would not be in the best interests of the child.
In a termination of parental rights case, the state must prove all of the elements of its case by clear and convincing evidence. LSA-Ch.C. Art. 1035; State in the Interest of L.L.Z. v. M.Y.S., 620 So.2d 1309 (La.1993); State in the Interest of V.T., supra. That evidence must allow the conclusion that termination is in the best interest of the children. LSA-Ch.C. Art. 1039; State in the Interest of A.M.M., supra.
A trial court's factual determinations will not be set aside in the absence of manifest error. State in the Interest of V.T., supra; State in the Interest of K.D., 586 So.2d 692 (La.App. 2d Cir.1991).

Children in Need of Care
JC and BN were placed in the custody of the state on December 13, 1989. The children were placed in foster homes and *429 have been maintained in the state's custody for the entirety of these proceedings. On May 30, 1990, the children were adjudicated in need of care. The state's petition to terminate the mother's parental rights was filed on October 11, 1991. A termination hearing was held on March 2 and May 7, 1992. The judgment terminating parental rights was signed on June 30, 1993. The requirements of LSA-Ch.C. Art. 1015(5)(a) of a prior adjudication and removal are satisfied on this record. See State in the Interest of A.M.M., supra; State in the Interest of TK, 568 So.2d 636 (La.App. 3d Cir.1990).

Fitness as a Parent
The term "unfit" includes parents whose medical or emotional illness, mental deficiency, behavior or conduct disorder, severe physical disability, substance abuse or chemical dependency makes the parent unable or unwilling to provide an adequate permanent home for the child at the present time or in the reasonably near future based upon expert opinion or based upon an established pattern of behavior. LSA-Ch.C. Art. 1003(10)(c).
A medical report of the mother's treatment at Central Louisiana State Hospital in Pineville, Louisiana, in 1988, is in the record. After taking an overdose of Xanax and Halcion, she was hospitalized at Central for approximately two weeks. She was diagnosed with Histrionic Personality Disorder, which is marked by the tendency to be dramatic and use exaggerated gestures. HPD is often observed in persons with hysteria, neuroses and some psychoses. She was also diagnosed as suffering from Dysthymia, a mood disorder marked by loss of interest in activities previously enjoyed. Persons suffering from Dysthymic Disorder often experience a "down in the dumps" feeling that lasts in excess of two years.
The mother testified that she has lived with a boyfriend, Wendell Moore, for approximately two years. They have a room in a house in Natchitoches, Louisiana. Appellant further stated that while she did not have a job (and hadn't had one in 10 years), "I can get a job any time I want. Is that what ya'll want?" When asked how she would support herself and the children should they be released into her custody, she stated, "I think I am going to grab welfare and use it for a little while. Everybody else gets to.... I would have to ask welfare for a home until I could baby-sit and make enough to pay my own rent."
In addition, she stated that from time to time she drank and that she had taken drugs in the past. The boyfriend, Moore, testified that she attended a substance abuse clinic in Natchitoches and that a drug screen performed at the clinic indicated the presence of drugs in her system. While the mother initially admitted to attending this clinic, she later testified that, "I considered myself too sick at the time to go to anything like that, even though I wasn't on drugs."
The trial court noted that whenever the mother appeared before the court, she exhibited a total inability to understand and practice the obligations of parenthood. Additionally, she seemed distant and distracted and, though she professed her affection for the children, she appeared unconcerned about their long-term well-being.
On this record, the state has shown by clear and convincing evidence that the mother is unfit to retain parental control under LSA-Ch.C. Art. 1015(5)(b). See State in the Interest of V.T., supra; State in the Interest of C.L.R. v. Russo, 567 So.2d 703 (La.App. 3d Cir.1990); State in the Interest of B.C., 483 So.2d 1137 (La.App. 5th Cir.1986).

Reformation
During the course of these proceedings, based on reports from the Jackson Parish Hospital, the Alexandria Substance Abuse Clinic and a mental health evaluation, the trial court ordered the mother to obtain substance abuse treatment and mental health counseling. In spite of encouragement and offers of transportation by the case workers, she refused the court-ordered rehabilitative services.
When asked by the trial court why she refused to undergo counseling or treatment, she stated that she did not need to because she was doing "nothing I can't quit, leave alone." Appellant also stated, "I didn't know *430 I had to have drug screens. When I go to church I sure don't take medicine or you know, things like that.... I am not really a drug user. I mean I have never took anything strong or drunk anything really strong.... Something mild every now and then, maybe."
The mother stated that she had not visited her children for over a year, because she didn't like her son's personality and because "I don't care about welfare people being around me." She testified that she did not cooperate with the case workers because "I serve the Lord and I sure don't serve welfare people." She did believe, however, that it was the welfare department's job to take care of her. "It seems like if they wanted to do a job they would have done something the first month and got it over with. You know, you don't leave me laying around sick like this in this world. People don't treat me like that and get away with it." See State in the Interest of JH v. RFH, 572 So.2d 629 (La. App. 3d Cir.1990), writ denied, 575 So.2d 374 (La.1991).
The second prong of LSA-Ch.C. Art. 1015(5)(b) is also satisfied. The mother has shown no indication of reformation.

Reunification
Earline Humphrey, who is employed by the Department of Social Services in Winn Parish, was the supervisor assigned in 1989 to this case. According to Ms. Humphrey, five different case plans were prepared and eventually abandoned because of the mother's inability and/or unwillingness to make an effort to regain custody of her children. After a period in excess of two years, DSS changed its goal from rehabilitation and reunification to termination of parental rights.
The record reflects that reasonable efforts to reunite the mother with her youngest children were made by DSS and that reunification is not in the best interest of the children. See State in the Interest of V.T., supra; State in the Interest of JH, supra; State in the Interest of CAM, 565 So.2d 523 (La.App. 3d Cir.1990).

Best Interest of the Children
The children have been in foster care since December 1989, at which time they were two months and three years old. They were placed in the same foster home. The record contains a letter from the case worker to the trial court noting that the children have bonded to their foster parents. Additionally, they have been accepted as part of the family by their foster parents and their extended families. Also, it was Ms. Humphrey's feeling that the foster parents were prepared to commit long-term to the children.
Appellant has consistently refused to seek drug abuse treatment or mental health counseling despite court order. Furthermore, appellant has not demonstrated her ability to provide or care for the children; she is unable to provide housing and has not even attempted to secure employment.
Given the record, we find that the state has proven by clear and convincing evidence that the termination of parental rights is in the best interest of the children. LSA-Ch.C. Art. 1039; State in the Interest of A.M.M., supra.

Evidence
Appellant argues that the trial court erred in allowing hearsay testimony on the issue of drug screens and mental evaluations.
In determining whether the trial court erroneously allowed this testimony, we must consider whether the particular ruling was erroneous and, if so, whether the error harmed or prejudiced appellant. Unless the answer to both of these queries is "yes", reversal is not warranted. American Manufacturers Mutual Insurance Co. v. General Motors Corp., 582 So.2d 934 (La.App. 2d Cir.1991).
The party alleging error has the burden of showing that the error was prejudicial to the case. The determination is whether the error, when compared to the whole record, has a substantial effect on the outcome of the case. Id.
Over an objection by appellant's court-appointed attorney, the case worker, Earline *431 Humphrey, testified that the determination that the mother had a substance abuse problem was based on a report from the Jackson Parish Hospital and an evaluation from the Alexandria Substance Abuse Clinic. Ms. Humphrey also testified that drug screens performed at the Jackson Parish Hospital and Alexandria and Natchitoches Substance Abuse Clinics were positive. However, no other evidence of these test results was introduced, nor was any health care professional called to testify.
The Department of Social Services' objection to evidence of drug screens offered by appellant was overruled and these exhibits were admitted into evidence. If the trial court erred in allowing Ms. Humphrey's testimony, such error was harmless given the latitude allowed to appellant and the other evidence of record. Viewing the record in its totality, and without consideration of Ms. Humphrey's testimony, we find substantial evidence to support the trial court's determination that termination of appellant's parental rights was warranted.

Attorney Fees
Appellant's court-appointed attorney seeks an award of attorney fees and requests that this award be taxed as a cost of these proceedings to appellee, Department of Social Services.
Prior to 1987, the Department of Health and Human Resources could be required to pay the fees of the attorney appointed to represent an indigent parent in termination and similar proceedings. See State in the Interest of Johnson, 475 So.2d 340 (La.1985); State in the Interest of C.P., 463 So.2d 899 (La.App. 2d Cir.1985).
Code of Juvenile Procedure Article 95 was amended, however, by Acts 1987, No. 627 to prohibit the assessment of fees of attorneys appointed to represent indigent parents against the DHHR in child in need of care and termination proceedings. See State in the Interest of T.K., supra; State in the Interest of HLD v. CDM, 563 So.2d 360 (La.App. 3d Cir.1990).
LSA-Ch.C. Art. 1016, effective January 1, 1992, provides that the child and the parent have the right to separate counsel in a termination proceeding and that upon determining that the parent is indigent, the court shall appoint an attorney to represent the parent. However, the legislature made no provision for the compensation of attorneys appointed by the court to represent indigent parents.
Therefore, we remand the case to the trial court with instructions to refer this issue to the indigent defender board. See State in the Interest of CAM, supra.

CONCLUSION
The judgment of the trial court terminating the mother's parental rights is affirmed. The case is remanded to the trial court with directions to refer the matter of compensation for appellant's court-appointed counsel to the indigent defender board.
AFFIRMED; REMANDED.
NOTES
[1] The Department of Social Services is the successor agency to the Department of Health and Human Resources. LSA-R.S. 36:471 and acts 1988, 1st Ex.Session, No. 1, Secs. 1 and 5.